# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, NORTHERN DIVISION AT KNOXVILLE

| | |
|---|---|
| SKI CHALET VILLAGE OWNERS CLUB, INC., ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EMPLOYERS MUTUAL CASUALTY COMPANY, ) <br> Foreign Insurance Company, ) <br>     Defendant. ) <br> ) | No: 3:16-CV-00020 <br> **JURY DEMAND** |

## COMPLAINT

Plaintiff, through counsel, respectfully submits the following as its cause of action against the Defendant for breach of an insurance contract and bad faith:

I.

## JURISDICTION

The Plaintiff is an incorporated Tennessee Nonprofit Association operating solely as a homeowner's association for homeowners within the Chalet Village community in Sevier County, Tennessee. The Defendant, Employers Mutual Casualty Company (hereinafter the "Defendant" or "EMCC") is an Iowa insurance company principally in business in Iowa, but operating in various states in the Union, including the State of Tennessee. The Defendant may be served with process through the Tennessee Commissioner of Insurance as provided for in T.C.A. § 56-2-504 and the F.R.C.P. This cause of action arises out of an insurance contract sold and issued by the Defendant to the Plaintiff to insure real property and improvements thereon located within Sevier County, Tennessee. The parties being entities principally located and domiciled in different states and the amount in controversy exceeding $200,000.00, this Honorable Court has jurisdiction over the parties and subject matter herein pursuant to 28 U.S.C.§1332. The Northern Division of the Eastern District of

Tennessee is the proper venue since this cause of action arises out of an insurance policy issued and losses occurring within Sevier County, Tennessee.

II.

**FACTS**

In exchange for the payment of premiums by the Plaintiff, the Defendant issued a "Commercial Property Policy" to the Plaintiff for coverage of three parcels of real property and improvements thereon within Chalet Village in Sevier County, Tennessee. The policy number is **4A6-61-46-16**. The effective dates of coverage applicable to this cause of action are December 7, 2014 through December 7, 2015, with a renewal thereafter with substantially the same coverage. A copy of what the Plaintiff believes to be the entire insurance policy package, with endorsements, as it relates to this loss is attached hereto as Exhibit A.

III.

The Plaintiff, as a nonprofit community association, owns and manages three recreational facilities within the Chalet Village community. All three facilities are covered by the insurance policy referenced above. The loss subject of this cause of action occurred at the Plaintiff's recreational facility known as the "Chalet Village North Clubhouse" with a listed address of 705 Village Loop Road, Gatlinburg, Tennessee. It is identified within the insurance policy as Location No. 002. The facility includes a clubhouse building, tennis courts, bathrooms and swimming pools with a shared bathing and sun deck. The facility is utilized by owners in the community, their guests and overnight vacation rental guests of property owners.

IV.

The Plaintiff would show that the insurance policy specifically includes affirmative

coverage on the swimming pools at the Chalet Village North facility. Within <u>Exhibit A</u> are copies of the Declaration pages for the policy period ending December 7, 2015 reflecting coverage for the building, personal property, extra expense, pumps, filters and equipment and the pool(s). They reflect $300,000.00 in coverage on the pool(s), with the optional coverage of "Replacement Cost". The renewal shows the same coverage, except the pool limit is listed at $306,000.00.

V.

Near the end of October, 2015, the Plaintiff's representatives determined that one of Chalet Village North's pools was suffering an uncharacteristic water loss and might be malfunctioning or damaged. In attempting to discover the cause or source of the water loss, they also discovered ground supporting the pool on the "lower" side of the structure had partially dropped and shifted. The Plaintiff undertook immediate measures to determine the cause of the water loss and ultimately discovered that a plumbing pipe servicing the pool had ruptured and discharged water from the pool plumbing system in considerable volume. The ruptured pipe and discharge of water weakened and jeopardized the structural integrity of the pool at the lower or downhill side, threatening collapse of the pool if immediate measures were not undertaken. The Plaintiff submitted its claim under the policy through the Defendant's agent on November 3, 2015.

VI.

The Plaintiff would show that in addition to taking the immediate extensive measures to repair the ruptured pipe and prevent any further escape of water from the plumping system, it undertook urgent and aggressive remedial measures to sustain the integrity of the pool and prevent collapse or other damages. In this regard, the Plaintiff would show that the typography in the vicinity of the facility is mountainous. At the

location of the damage, the pool is situated on a substantial foundation reinforced and laterally supported by the contiguous earth and vegetation. The configuration of the pool and pool deck is designed and engineered with earthen/natural lateral support moderately sloping with the contour of the lower side of the mountain, which serves as an integral part of the structural system of the pool, pool deck and foundation.

VII.

Extensive steps were undertaken by the Plaintiff to stop further damage to the pool structure and potentially neighboring properties. The Plaintiff secured the services of engineers, geotechnical consultants, excavation and general contractors and testing services to address both immediate stabilizing measures and to determine the best, cost effective way to restore the structural integrity of the pool and prevent further damages. The Plaintiff has followed the recommendations of the engineering and geotechnical experts in reinforcing the pool by the excavation of saturated soil and construction of a deeply embedded, large concrete block retaining wall and placement of backfill and rock as directed and under the guidance of the experts. An optional measure of installing a vertical support beam system to stabilize and reinforce the structure was rejected as being neither cost effective nor recommended as the preferred remedial plan.

VIII.

The Defendant, EMCC, was fully apprised of the losses and measures demanded under the circumstances. In fact, representatives of the Defendant affirmed that under the policy the Plaintiff had an affirmative duty to prevent further losses and to mitigate damages. However, the Defendant did not provide expert or financial assistance following the loss. Only one representative of the Defendant, on a single occasion, visited the site for a very brief overview, taking photographs and then submitting them to EMCC. Sometime

thereafter, the Defendant suggested that a meeting should occur onsite with the Defendant's "expert" to assist in determining the "cause of loss". However, apparently upon review of the photographs provided by EMCC's agent to a laboratory firm, the firm's technicians concluded that the cause was the plumbing pipe failure and that it "most likely occurred due to cold weather/frozen water in the pipes".

IX.

Based upon the above conclusions provided to Plaintiff by a regional adjuster and through direct communication with the representative of the Defendant, the Plaintiff understood that the Defendant agreed that the "busted" pipe constituted a covered claim and covered cause of loss. For the days and then weeks following the discovery of the loss, the Plaintiff requested that EMCC affirm coverage and engage in assisting in the substantial ongoing expenses incurred by the Plaintiff to remediate the loss. The Plaintiff provided to EMCC the various professional reports and findings secured by the Plaintiff through the hired engineers and other professionals supporting the claim. Ultimately, in face of the lack of response from EMCC and the substantial ongoing financial burden suffered by the Plaintiff in repairing and protecting the pool, the Plaintiff secured counsel to contact the Defendant to again stress the urgency of the matter and the lack of good faith on the part of EMCC in failing to afford coverage and timely respond. A copy of that letter is attached hereto as Exhibit B.

X.

On January 6, 2016, the Plaintiff received correspondence from the Defendant, through its representative, advising that there would be *no coverage* forthcoming from EMCC to the Plaintiff. A copy of that letter is attached hereto as Exhibit C.

XI.

The Plaintiff submits that the Defendant's denial of coverage is erroneous and in bad faith. The Defendant purports to support its denial of coverage principally on the basis that "land" *is not covered property*, citing policy provisions that exclude land and only show coverage for specified buildings or property. However, in its denial letter EMCC fails to note that the swimming pool *is* a specifically listed covered structure under the policy and that the Plaintiff's claim is not for its *land*, but rather for its *pool*. The Plaintiff does not seek damages - or coverage - for the loss of dirt or vegetation or ground, but rather the damage, stabilization, reinforcement and restoration the Plaintiff has incurred - and will incur - for the pool.[1] The entirety of the incurred costs are directed at the damage, stabilization, reinforcement and restoration of the pool - a covered property. The fact that a structural component of the pool affected involves natural elements (earth and vegetation) is inconsequential. The Defendant has disingenuously denied coverage on the basis that the Plaintiff is, somehow, claiming coverage for land, dirt, vegetation or ground for the sake of the land, dirt, vegetation or the ground.

XII.

The Plaintiff avers that the denial letter seems to further suggest that EMCC has denied coverage on the basis that the *cause of loss* is not covered under the Plaintiff's policy. This position is also erroneous and in bad faith. The Plaintiff's policy provides coverage for any risk or cause of loss *unless* the cause is specifically *excluded or limited* in the policy. The Defendant asserts reliance upon two exclusions. The first is "earth movement", the second is "water". In terms of "earth movement", the "Exclusions" section seemingly relied upon by the Defendant indicates that it will not pay for losses or damage

---

[1] It is worthy to note that within the denial letter, the Defendant admits that the Plaintiff has undertaken measures "*to attempt to stabilize and reinforce the pool…*" (Exhibit C, page 1.).

*caused by* the earth movement. The damage and losses suffered by Plaintiff here *were not caused by* earth movement (or landslide or sinking or shifting). Rather, the landsliding and sinking were the *result of* the actual cause - the ruptured pool plumbing. The earth movement was an effect…a consequence, not a cause; and, it is misleading to suggest otherwise.

XIII.

The Plaintiff further avers that the Defendant's assertion that "water" is an excluded cause of loss under these facts disregards the Defendant's own policy language. While coverage for damage caused by water is excluded under a number of situations - notably flood, spray or backup of sewer, underground water pressing on foundations or floors, etc. - the policy also specifically provides the following *conditional* exclusion from…

> **g.** *Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:*
>
> *(1) You do your best to maintain heat in the building or structure; or,*
> *(2) You drain the equipment and shut off the supply if the heat is not maintained.*

Stating this language in the affirmative, the policy *does* cover losses caused by frozen plumbing if the insured undertakes reasonable steps to prevent freezing. Here, the Plaintiff does - and historically has - diligently maintained the pool and the pool plumbing systems in the manner recommended and best utilized to protect the pool throughout the winter season, including maintaining circulation and heat on the system. At no time has the Defendant indicated otherwise. Accordingly, the discharge of water by the rupture of plumbing caused by freezing is a covered cause of loss under the policy under its terms.

The Defendant's suggestion otherwise defies the policy.[2]

XIV.

In addition to the foregoing, the Plaintiff avers that its damages and losses are recoverable under the policy pursuant to Subsection E.3.(a)(4) - <u>Duties in the Event of Loss or Damage</u>. That section imposes a "duty" upon the insured to...

> *Take all reasonable steps to protect the Covered Property from further damage, and keep a record of **your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim**. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.* (emphasis provided)

Unquestionably, the actions and expenses incurred by the Plaintiff have protected the Covered Property - the pool - from further damage. Without the actions of the Plaintiff and the expenses incurred, the covered property would collapse, fail or be so damaged or weakened as to result in a decidedly greater *covered* loss. The above section suggests an affirmative duty on the insured to take the very steps taken by the insured here, *but it also allows for the recovery of such expenses "necessary to protect the Covered Property, for consideration in the settlement of the claim"*.

XV.

The Plaintiff would show that to date it has incurred over *$200,000.00* in out of pocket expenses to reinforce and repair the pool. It is anticipated that the total cost will be - absent further unforeseen circumstances - no less than $275,000.00 in direct out of pocket expenses. In addition, the Plaintiff has borrowed funds and incurred fees, interest and expenses in attempting to fund the repairs. While imposing policy *duties* upon the Plaintiff such as mitigation of losses, immediate preventative measures, documenting and reporting,

---

[2] As indicated earlier, the Defendant's hired laboratory technicians surmised that the rupture was caused by freezing.

8 | P a g e
Case 3:16-cv-00020-TAV-HBG   Document 1   Filed 01/13/16   Page 8 of 10   PageID #: 8

etc. EMCC has provided no assistance to the Plaintiff in connection with the loss. On the contrary, after a period of over sixty days from the initial claim, the Defendant has wholly denied coverage, relying upon erroneous and strained use of policy language. The Plaintiff avers that the actions of the Defendant constitute bad faith as a matter of common law and under TCA§ 56-7-105.

COUNT I.

Breach of Insurance Policy

The Plaintiff adopts and incorporates herein the facts and allegations set forth in Paragraphs I. – XV. above. The Plaintiff avers that Defendant EMCC is liable to the Plaintiff under the insurance policy for its losses and damages. The Defendant's failure to afford coverage and to compensate Plaintiff for its damages and losses is in direct violation and breach of the insurance agreement between the parties. The Defendant is liable to the Plaintiff for its losses and damages under the policy and the Defendant's failure to do so constitutes breach of contract and breach of the common law duty of good faith and fair dealing in contracts.

COUNT II.

Statutory and Common Law Bad Faith

The Plaintiff adopts and incorporates herein the facts and allegations set forth in Paragraphs I. – XV. above. The Plaintiff avers that the Defendant is guilty of statutory bad faith under T.C.A.§ 56-7-105. The Defendant failed to make a determination and fully satisfy the claim within sixty (60) days of demand. Despite informing the Defendant of the urgency and needed repairs, providing documentation and complying with the Defendant's requirements under the policy, EMCC undertook minimal investigation of the claim, failed to support the Plaintiff in the required expedited response and then fully denied coverage.

The Plaintiff avers that these actions and denial of coverage constitute bad faith under the statute, whereupon the Plaintiff is entitled to the statutory penalties and damages set forth therein. Additionally, the Plaintiff avers that EMCC is guilty of common law bad faith.

COUNT III.

Damages

The Plaintiff adopts and incorporates herein the facts and allegations set forth in Paragraphs I. – XV. above. The Plaintiff is entitled to recover its losses and damages from the Defendant in this cause believed to exceed $275,000.00. In addition, the Plaintiff is entitled to recover to any sums for additional or extensions of coverage as provided under the policy, as well as the statutory and common law penalties as set forth above for the Defendant's bad faith.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff seek a Judgment against the Defendant in the amount to be proven at the hearing in this cause, but not less than $275,000.00 and additional statutory award against the Defendant as provided under TCA§ 56-7-105. A jury is demanded to try all matters herein.

Respectfully submitted,

 /s/ BRIAN T. MANSFIELD
Brian T. Mansfield, BPR #010543
*Attorney for the Plaintiff*
164 North Henderson Avenue, Suite A
Sevierville, TN 37862
865-428-7892