UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SKI CHALET VILLAGE OWNERS CLUB, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:16-CV-20-TAV-HBG |
| EMPLOYERS MUTUAL CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

This civil action is before the Court on defendant's Motion to Dismiss for Failure to State a Claim [Doc. 8]. Plaintiff filed a response [Doc. 11] and defendant replied [Doc. 12]. For the reasons contained herein, the Court will grant defendant's motion to dismiss.

**I.    Background**

The dispute in this action arises over an insurance policy contract entered into by plaintiff, Ski Chalet Village Owners Club, Inc., and defendant, Employers Mutual Casualty Company. The policy covered three recreational facilities owned and managed by plaintiff [Doc. 1 p. 2]. The facility relevant to the present litigation is known as "Chalet Village North Clubhouse," and is identified within the insurance policy as Location No. 002 ("Location 2") [*Id.*].

The insurance policy at issue provides affirmative coverage on the swimming pool situated in Location 2 [*Id.*]. The policy, however, contains a number of exclusions and

limitations, both with respect to the property covered, and to the cause of the property loss. Notably, the policy contains the following provisions:

> **2. Property Not Covered**
> Covered Property does not include:
> …
> Land (including land on which the property is located), water, growing crops or lawns;
> …
> **B. Exclusions**
> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> …
> **b. Earth Movement**
> …
> **(2)** Landslide, including any earth sinking, rising or shifting related to such event;
> …
> **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.
> …
> **g. Water**
> …
> **(2)** Mudslide or mudflow;
> …
> This exclusion applies regardless of whether any of the above . . . is caused by an act of nature or is otherwise caused . . . . [Doc. 1-A].

Plaintiff alleges that in October 2015, plaintiff's representatives learned that one of Location 2's pools was suffering an "uncharacteristic water loss" [Doc. 1 p. 3]. While conducting an investigation into the cause of the water loss, plaintiff's representatives further learned that the "ground supporting the pool on the lower side of the structure had partially dropped or shifted" [*Id.*]. Plaintiff subsequently learned that the ground

2

movement had resulted from the water loss, which stemmed from a ruptured pipe servicing the pool [*Id.*]. The ruptured pipe had discharged significant amounts of water and "jeopardize[ed] the structural integrity of the pool" [*Id.*]. An inspection by defendant's agent indicated that the plumbing pipe failure "most likely occurred due to cold weather/frozen water in the pipes" [*Id.* at p. 5].

As a result of the damage, plaintiff asserts that it was forced to take "immediate extensive measures" to "restore the structural integrity of the pool" [*Id.* at p. 3]. In its complaint, plaintiff details the measures that it took to sustain the pool, by "reinforcing the pool by the excavation of saturated soil and construction of a deeply embedded, large concrete block retaining wall and placement of backfill and rock" [*Id.* at p. 4]. Plaintiff avers that these measures were necessary to prevent collapse of the pool [*Id.*].

Plaintiff alleges that it submitted its claim through defendant's agent on November 3, 2015 [*Id.* at p. 3]. Plaintiff further alleges that when it received no response from defendant, it retained counsel and again contacted defendant [*Id.* at p. 5]. On January 6, 2016, plaintiff received correspondence from defendant indicating that there would be no coverage provided for the relevant damages. [*Id.*]. Plaintiff subsequently initiated the present suit.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. To survive a motion to dismiss, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief, 'in order to give [the opposing

party] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555.

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679. When considering a 12(b)(6) motion, the Court "may consider the complaint and any exhibits attached thereto . . ." *Basset v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

4

### III. Analysis

Plaintiff brings claims for breach of the insurance contract, and also for statutory and common law bad faith. Defendant moves to dismiss all claims. The Court will first address the breach of contract claim, and then the bad faith claims.

### A. Breach of Contract

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language[.]" *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012). "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Id.* (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386–87 (Tenn. 2009)).

Within an insurance contract, "exclusions help define and shape the scope of coverage." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). While the insuring agreement sets the outer limits of insurer liability, exclusions operate to decrease coverage. *Id.* Exclusions "should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose." *Id.* at 8.

Typically, there is insurance coverage where an excluded cause of loss and a covered cause combine to cause damage. *See Planet Rock v. Regis Ins. Co.*, 6 S.W.3d

5

484, 493 (Tenn. 1999). An insurer may contract around that possibility, however, through use of an "anti-concurrent cause provision," such that there is no coverage for damage that is caused in any manner by an excluded cause regardless of any other concurring or contributing causes. *See Front Row Theater, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 18 F.3d 1343, 1347 (6th Cir. 1994); *Hardy v. Kelly LLC v. QBE Ins. Corp.*, No.3-11-0155, 2012 WL 1744670, *3 (W.D. Tenn. May 16, 2012).

In this case, defendant argues that it was not obligated under the contract to provide insurance coverage because both "earth movement," and "water" were excluded causes, and each contributed to causing the damage to the pool [Doc. 9]. Due to the anti-concurrent cause provision, defendant contends that any damage for which earth movement or water is a contributing cause is excluded under the policy. Defendant also argues that it was not obligated to provide coverage because the damage was to "land," which is excluded under the terms of the policy. Because the Court finds that the "earth movement" exclusion applies, it need not determine whether the water exclusion or land exclusion would be sufficient to support a motion to dismiss.

### 1. Earth Movement Exclusion

The plain language of the insurance policy excludes loss caused either directly or indirectly by "earth movement," which the policy defines as "landslide" and "earth sinking, rising, or shifting related to such event" [Doc. 1-A]. The policy further defines earth movement as "earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of

foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface." [*Id.*]. Because of the anti-concurrent cause provision, there is no coverage for any damage caused either directly or indirectly by such earth movement, regardless of any other contributing causes. Therefore, there is no coverage for damage to the pool in any way resulting from "earth movement" as it is defined in the policy, regardless of any other contributing or concurrent causes.

Reading the policy language describing "earth movement" consistent with its "plain meaning," the Court finds that the language covers the events detailed by plaintiff in its complaint. *See Lee v. Nationwide Mut. Ins.*, 1988 WL 39567, at *3 (Tenn. Ct. App. Apr. 29, 1988) (interpreting "earth movement" to mean "any change of place, position, or posture of the soil"). Indeed, plaintiff admits at various points in the complaint that the "ground supporting the pool . . . had partially dropped and shifted," and that "landsliding" and "sinking" took place [Doc. 1 p. 3, 6, 7]. These words used by plaintiff to describe the "symptoms" of the damage to the pool mirror exactly those words used in the insurance policy to define earth movement.

Additionally, the complaint indicates that the "urgent and aggressive remedial measures to sustain the integrity of the pool" taken by plaintiff were necessary after plaintif learned that the earth had "dropped and shifted" [*Id.* p 3–4]. Plaintiff argues that the exclusion should not apply because the original cause of the damage was the ruptured water pipe, which then resulted in the subsequent earth movement. [*Id.* p. 7 "the

7

landsliding and sinking were the result of the actual cause-the ruptured pool plumbing"]. Because of the anti-concurrent cause provision, plaintiff's argument is not well taken. As the earth movement was a cause of the damage or loss, there is no coverage regardless of any other contributing or concurrent causes of loss. Therefore, it does not matter that the movement resulted from water leaking from a burst pipe; this is simply a concurrent cause the kind of which the policy anticipates. Therefore, the Court finds that the "earth movement" exclusion of the insurance contract applies to the damages in this case, and thus that the claimed damages to the pool are not covered by the insurance policy.

### 2. Insured's Duty in the Event of Loss or Damage

Plaintiff argues that even if an exclusionary provision applies, a different provision of the insurance contract provides coverage. Specifically, plaintiff argues that its damages and losses are recoverable under Subsection E.3(a)(4) of the contract, which requires that in the event of damage or loss the insured:

> Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

Plaintiff contends that this language suggests "both a duty and the right to recover expenses in connection with the insured's protection of covered property." [Doc. 11 p.5]. Therefore, plaintiff argues that because it took affirmative and costly steps to protect the pool, a covered property, its costs in doing so should be covered under the insurance policy. Defendant argues that this provision does not create coverage, but rather that it is

8

a condition precedent to obtaining coverage for damage to a covered property not resulting from an excluded cause [Doc. 12].

Upon review of the policy, the Court finds that defendant's interpretation of the provision is correct. The interpretation that plaintiff advances would permit the insured to acquire coverage for covered property, regardless of the cause of loss, merely by taking and documenting steps to protect the property. Such an interpretation would render the exclusionary cause provisions of the insurance contract meaningless, and substantially inhibit the objectives of the insurance contract as a whole. *See Mid-South Title Ins. Corp. v. Resolution Trust Corp.*, 840 F. Supp. 522, 526 (W.D. Tenn. 1993) (quoting *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982)) (stating that an insurance contract shall not be interpreted in a manner "which would lead to an absurd conclusion or render the policy nonsensical and ineffective"). Therefore, the Court agrees with defendant that this provision does not independently create coverage for damage to the swimming pool, but rather that it is a condition precedent to obtaining coverage in situations otherwise covered by the insurance policy.

In sum, the Court finds that the plaintiff has not pled a plausible claim for breach of contract, and as such the Court will dismiss plaintiff's breach of contract claim.

### B. Statutory and Common Law Bad Faith

Plaintiff also asserts a claim pursuant to Tennessee's bad faith statute, as well as a claim for common law bad faith. The bad faith statute is codified at Tennessee Code Annotated Section 56-7-105(a). In order to recover under the bad faith statute, a plaintiff

must prove: (1) the policy of insurance had become "due and payable," (2) a formal demand for payment was made, (3) the insured must have waited sixty (60) days after making demand unless there was a refusal to pay prior to the conclusion of sixty days, and (4) the refusal to pay was not in good faith. *See Ginn v. American Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004).

Because the Court finds that the insurance policy in this case did not cover the claimed damage to the pool, the policy never became "due and payable." *See Green v. Mutual of Omaha Ins. Co.*, No. 10-2487, 2011 WL 112735, *8 (W.D. Tenn. Jan. 13, 2011) (finding that because an insurance policy did not grant coverage, a plaintiff's claim "did not become due and payable). Therefore, plaintiff has not met the statutory requirements of the bad faith statute, and thus has not pled a plausible claim for statutory bad faith. Furthermore, the Court notes that an insurer is not liable for statutory bad faith if the denial of coverage "rests on legitimate and substantial legal grounds." *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378 (6th Cir. 2007). Considering that the Court finds that defendant is correct in its contention that the damage to the pool was not covered by the insurance policy, defendant's refusal to pay indeed rested on "legitimate and substantial legal grounds," and thus was not made in bad faith. *See id.*

In addition, the Court notes that Tennessee courts do not recognize a common law remedy for bad faith. *See Leverette v. Tenn. Farmers Mut. Ins. Co.*, No. M2011-00264-COA-R3-CV, 2013 WL 817230, at *18 (Tenn. Ct. App. Mar. 4, 2013). Rather, the "excusive remedy is statutory," by means of Tennessee's bad faith statute. *Cracker*

10

*Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 972 (M.D. Tenn. 2008). Plaintiff does not cite, and the Court is not aware, of any cases holding to the contrary. Therefore, in addition to not pleading a plausible claim for statutory bad faith, plaintiff has not pled a plausible claim for common law bad faith. As such, the Court will grant defendant's motion to dismiss as to the statutory bad faith and common law bad faith claims.

## IV. Conclusion

For the reasons discussed herein, defendant's motion [Doc. 8] will be **GRANTED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this action.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE